IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 3:23CR38-DJN |
| | ) | |
| KEITH TAVERS | ) | |

**POSITION OF THE UNITED STATES ON SENTENCING**

The United States of America, through undersigned counsel, submits the following

position regarding the sentencing of defendant, Keith Travers.  Defendant pled guilty to one

count of carjacking, in violation of 18 U.S.C. § 2119.  The United States has no objection to the

Presentence Investigation Report.  The report calculates defendant's adjusted offense level is 28

and he is in Criminal History Category VI.  Accordingly, defendant's guideline range is 140-175

months.  The United States seeks a sentence at the upper end of that range.[1]

**Discussion**

During sentencing, federal courts must follow a multi-step process that analyzes both

procedural and substantive concerns.  First, the Court must correctly calculate the applicable

Guidelines range.  *See Gall v. United States*, 552 U.S. 38, 49 (2007).  Second, "the court must

determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if

not, select a sentence [within statutory limits] that does serve those factors."  *United States v.*

---

[1] The parties have agreed that "there exists no aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines that should result in a sentence outside of the advisory Guidelines range."  Plea Agreement, ECF No. 44, p. 4.

*Diosdado-Star*, 630 F.3d 359, 363 (4th Cir. 2011) (internal quotation marks omitted).  To the extent the Court deems some deviation from the Guidelines range appropriate, it must give serious consideration to the extent of the deviation and must adequately explain it "to allow for meaningful appellate review and to promote the perception of fair sentencing."  *Id*. at 365 (internal quotation marks omitted).  In all events, the Court must impose a sentence that takes into consideration the factors listed under 18 U.S.C. § 3553(a).  *See id*. at 364.

Under 18 U.S.C. § 3553(a), the Court is required to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing set forth in § 3553(a)(2).  Specifically, the Court's sentence must reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  18 U.S.C. § 3553(a)(2).  Section 3553(a) further "provides that in determining a particular sentence, a sentencing court must consider seven enumerated *factors*," *United States v. Shortt*, 485 F.3d 243, 247 (4th Cir. 2007) (emphasis in original), including the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable Guidelines, any pertinent policy statements, the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offense, 18 U.S.C. §§ 3553(a)(1), (3)-(7).  "The sentencing purposes identified in § 3553(a)(2)(A) [through] (D) are the four foundational *purposes* of sentencing that have long prevailed throughout [American] jurisprudence—(1) punishment, (2) deterrence, (3) incapacitation, and (4) rehabilitation."  *Shortt*, 485 F.3d at 248-49 (emphasis in original) (citing Ilene H. Nagel,

Structuring Sentencing Discretion: The New Federal Sentencing Guidelines, 80 J. Crim. L. & Criminology 883 (1990)) (emphasis in original). "[M]ost of the specified purposes [of sentencing] listed in [§ 3553(a)(2)] hardly connote less punishment." *United States v. Navedo-Concepcion*, 450 F.3d 54, 58 (1st Cir. 2006). Indeed, most of the purposes of sentencing "certainly do not suggest leniency; only one listed purpose—to provide the defendant with medical care and training—has a softer tone." *Id*. at 58 n.3 (citing 18 U.S.C. § 3553(a)(2)). And, "[a]lthough still relevant," Congress and the Sentencing Commission have recognized that "th[is] fourth purpose, rehabilitation … [is] insufficient, standing on its own, to justify a particular sentence." *Shortt*, 485 F.3d at 249 (citing S. Rep. No. 98-225, at 38 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3221). Instead, the Senate Committee responsible for drafting the Sentencing Reform Act of 1984 "placed special emphasis on the first stated purpose—the need 'to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.'" *Id*. (citing S. Rep. No. 98-225 at 75). "As it observed, the first purpose 'should be reflected clearly in *all* sentences.'" *Id*. (emphasis in *Shortt*). A sentence that fails to serve the purposes of sentencing outlined in § 3553(a)(2) is just as unreasonable as one that is greater than necessary to serve such purposes. *United States v. Dowell*, 771 F.3d 162, 176 (4th Cir. 2014) (quoting *Shortt*, 485 F.3d at 248).

### A. Nature and Circumstances of the Offense

Though the carjacking in this case occurred on a single day, the grave danger defendant posed to others as a result spanned more than a week. The victim in this case was employed by a business that purchased catalytic converters. Indeed, it is through this activity that defendant met the victim. On several occasions beginning in May 2022, defendant sold catalytic converters to the victim. Then on August 6, 2022, defendant contacted the victim and offered to sell him

additional catalytic converters.  The two agreed to meet at Southside Plaza in Richmond, Virginia, where they had consummated prior transactions.

Instead of receiving more catalytic converters, though, when he arrived, the victim was robbed by defendant and an accomplice.  Indeed, as the sole purpose of the meeting to defendant was the carjacking and robbery, he did not even bring any catalytic converters with him.  When the victim realized this and turned to leave, the accomplice grabbed him and patted him down. As the victim spun away, the accomplice ordered him to turn over his wallet, keys and telephone. Aware now the true intentions of defendant and his accomplice, the victim started to reach for his gun to protect himself.  Defendant put a sudden end to that, pointing his own gun at the victim and exclaiming, "don't lose your life over this."  Defendant's possession of that firearm was itself a significant federal crime.  *See* 18 U.S.C. § 922(g)(1).  In genuine fear for his life, the victim turned his gun over to the accomplice, who racked it and pointed it at the victim.  The victim then turned over his car keys and wallet, which had between $5,000-6,000 inside.  Also, upon demand, he turned over his telephone.

The accomplice then drove off in the victim's car.  Defendant left in the car he and the accomplice had driven to the location.  This car, too, had been stolen, from an Extended Stay hotel in Richmond.  Defendant and his accomplice left the victim stranded at Southside Plaza without his car and, they thought, without a telephone.  Fortunately, the victim carried two telephones and only turned one over.  The other he used to contact the police to report the robbery.

While the carjacking was egregious, violent and extremely dangerous, it was not the only time in this case defendant endangered the lives of others in this case.  Ten days after the carjacking, on August 16, 2022, Richmond Police officers spotted the stolen car defendant had

used to get to and from the carjacking.  On that day they followed defendant as he drove the car to a Big Lots parking lot.  Defendant then exited the car.  When the officers approached him, defendant jumped back into the car and closed the door.  Attempting to apprehend defendant, one of the officers opened the driver's side door.  As he did, defendant drove off, striking the officer with the car.  Defendant then fled at a high rate of speed.  The officers gave chase, but eventually lost defendant.

Officers again spotted defendant driving the same stolen vehicle three days later, on August 19, 2022.  This time defendant took officers on a lengthy high-speed chase.  The police were only able to stay with defendant through air surveillance.  Eventually, defendant lost control of his car and crashed into a parked car.  He then fled on foot.  At the time, he had a firearm on his person again.  To avoid the consequences of his unlawful possession of that gun, as officers were closing in on him, defendant dove to the ground and threw the firearm under a nearby parked car.

A search of the stolen car defendant had been driving revealed drug needles, a crack pipe several baggies of a white powdery substance that tested positive for heroin and cocaine, and a stolen license plate, among other things.

Presentence Report ("PSR") pp. 4-6 ¶¶ 12-24.

### B. History and Characteristics of the Defendant

Defendant was born in Henrico, Virginia in 1986.  It appears his parents were married when he was born, though they divorced after 5-6 years of marriage.  PSR p. 18, ¶ 69.  When defendant was young his father was incarcerated on a drug-related charge.  The day he was released from prison, in 1991, defendant's father and his brother were shot and killed.  *Id*.

5

Aside from the loss of his father, defendant reports no significant trauma in his life. Indeed, he reports he has a good relationship with his family and his step-father was his role model. Id. p. 19, ¶ 70.

Defendant was diagnosed as a young child with attention deficit hyperactivity disorder. He reports no other mental health issues, though he states that he suffers anxiety. Defendant received his high school diploma in 2005 and received a welding certificate in 2018. *Id*. p. 19, ¶ 71; p. 20, ¶ 79.

Nothing in defendant's background supports a sentence below the applicable sentencing guidelines.

### C.      Seriousness of the Offense

By its nature, stealing a car from the person of another is inherently dangerous. Defendant and his colleague chose to carry this crime out with firearms, greatly enhancing the danger they posed. Indeed, they both expressed their willingness to use their guns should the victim resist. Crimes of this nature also create the real danger that the victim or a bystander will respond in a manner that causes harm. Indeed, the victim in this case was himself armed, for protection, and intended to use his gun to protect himself until defendant threatened to kill him. Moreover, defendant and his accomplice committed this armed crime in a public area, with numerous other individuals around who well could have been collateral damage had shots rung out. Defendant knowingly created a situation that could easily have turned deadly.

But the danger defendant posed did not end when defendant and his partner drove off leaving the victim stranded in the parking lot of Southside Plaza. Twice in the following days, in an effort to avoid capture for his initial violent crime, defendant led high-speed chases on public thoroughfares, endangering the lives of all unlucky enough to get in defendant's path. Indeed,

the vehicle portion of the second chase on August 19, came to an end when defendant lost control of his car and crashed into another, parked car.  He then fled on foot, and tossed a firearm that, if not recovered by authorities, could have been recovered by anyone in the area, including by children, or others, like defendant, intending to use firearms for dangerous and nefarious purposes.

Defendant's crime and the violent way in which he chose to carry it out and to attempt to escape capture were extremely serious.  This extensive conduct makes this criminal episode more severe than the typical carjacking.  Accordingly, a significant sentence is necessary and appropriate to reflect the extreme seriousness of this offense.

### D.     Need to Afford Adequate Deterrence

The Court must also consider how to deter others as a general matter from engaging in similar conduct.  *See*, *e.g. United States v. Morgan*, 635 F.App'x 423, 450 (10th Cir. 2015) ("General deterrence comes from a probability of conviction and significant consequences.  If either is eliminated or minimized, the deterrent effect is proportionally minimized.").  Absent the imposition of an appropriately substantial term of imprisonment in this case, "the effort to discourage similar wrongdoing by others through a reminder that the law's warnings are real and that the grim consequence of imprisonment is likely to follow" will not be achieved.  *United States v. Bergman*, 416 F.Supp. 496, 499 (S.D.N.Y 1976).  A severe sentence is necessary to send the appropriate message to both defendant and others like him that those who engage in this type of conduct will be caught and severely punished.

### E.     Need to Protect the Public from Defendant's Future Criminal Conduct

Defendant is in Criminal History Category VI, the highest under the guidelines.  He reached this pinnacle, not with mere peccadillos, but with additional serious crimes.

7

Defendant received his first significant conviction in 2009, at the age of 23, after he sold $20 worth of crack cocaine to a confidential informant. PSI p. 9, ¶ 46. He incurred new drug distribution charges and had a positive urine screen while on probation for this charge, though the probation violation notice for these offenses was dismissed. *Id*. p. 10, ¶ 46.

The new charges mentioned above resulted in a 2015 conviction for possession of heroin with the intent to distribute. Defendant also possessed a firearm in relation to this offense. PSI p. 10, ¶ 48.

Defendant received his third conviction for a drug-trafficking offense later that same year. The drug was again heroin. PSI p. 11, ¶ 49.

Defendant branched out into theft offenses in 2020 when, at the age of 34, he was convicted of grand larceny from the person. He was also charged with possession of a firearm and possession of a firearm by a felon as part of that criminal episode. PSI pp 12, ¶ 50. Defendant tested positive for cocaine and Fentanyl while on probation for this conviction. He was also convicted of two counts of petite larceny while on probation. *Id*. p. 12, ¶ 50. A probation violation petition was filed against defendant based on new charges and additional positive urine screens. These charges were subsequently nolle prossed. *Id*. p. 13, ¶ 50.

At the age of 35, defendant was convicted of two counts of petite larceny. It appears these offenses were committed the day of his arrest in this case. PSI p. 13, ¶ 51.

Defendant was on a term of probation at the time of the present offense. PSR p. 11, ¶ 50; p. 13, ¶ 53. His extensive record, including significant offenses that also involved firearms, requires a substantial sentence.

**F.      Need to Provide Defendant with Treatment, Medical Care and Education**

As was reported by State Probation when defendant was under supervision following his grand larceny conviction, defendant continues "to struggle with a severe drug addiction." PSI. p. 12, ¶ 50. He has tested positive on several occasions for cocaine and Fentanyl. *Id*. In addition, he reports using crack cocaine, heroin and Fentanyl for years, up until the day of his arrest in this case. *Id*. p 20, ¶ 77. While defendant completed a voluntary outpatient treatment program for 3 months (PSI p. 20, ¶ 78), he clearly remains in need of drug treatment. A significant sentence will allow defendant to receive the drug treatment he so surely needs.

.      **G.      Need to Avoid Unwarranted Sentencing Disparities**

A sentence at the top of the applicable guideline range would not result in any sentencing disparity.

## Conclusion

The United States recommends a sentence at the top of the guideline range in this case.

Respectfully submitted,

Jessica A. Aber
United States Attorney

By:      _____/s/_____
Stephen W. Miller
Virginia Bar No. 23704
Assistant United States Attorney
United States Attorney's Office
Suite 1900
919 East Main Street
Richmond, Virginia 23219
Tel.: (804) 819-5487
Fax: (804) 771-2316
Stephen.Miller@usdoj.gov

9